FALL, J.—I agree with the conclusions reached by
Judge SEEDS.

---

[No. 555.   August 22, 1893.]

## JAMES A. TOMLINSON, APPELLANT, V. TERRI-
TORY OF NEW MEXICO, APPELLEE.

CRIMINAL LAW—SALE OF INTOXICATING LIQUORS AT RETAIL, BY DRUGGIST,
WITHOUT LICENSE—INDICTMENT.—In a prosecution, on indictment,
against a druggist, for selling intoxicating liquors, at retail, without
license, an objection to the indictment, on the ground that it charges
more than one offense in one count, is not available on appeal, where
no effort was made to have the prosecution elect upon which offense
the defendant should be tried, except a motion to quash, which was
properly overruled, the defendant having pleaded, the plea not being
withdrawn, and the venue having been changed.

ID.—SCANDALOUS BRIEF—DISMISSAL OF APPEAL.—Where, on appeal, the
appellant's brief contains such an unwarranted attack upon the trial
judge, his conduct and rulings, as to amount to a scandalous and im-
pertinent attack upon the judiciary, and the appellate court of which
the judge below is a member, the appellate court may, of its own
motion, strike such brief from the files, and affirm the judgment
appealed from without further investigation.

APPEAL from a judgment of the Fifth Judicial
District Court, Chavez County, convicting defendant
of unlawfully selling intoxicating liquors, at retail,
without license.   Judgment affirmed.   Motion for
rehearing.   Denied August 26, 1893, without opinion.

F. W. CLANCY for appellant.

I.   The indictment is bad, and can not support
the verdict and judgment.   Section 4 of the act of the
legislative assembly of February 2, 1891, printed as

chapter 9 of the Laws of 1891, makes it an offense to carry on the business of retail liquor dealer without having first obtained a license; and it also makes it an offense to sell or attempt to sell any spirituous, malt, or vinous liquors without having first obtained a license. It will be seen by an examination of the indictment that the defendant was charged with the second of these offenses, viz., selling liquor without a license. It must be borne in mind, however, that the statute, when taken as a whole, does not intend to make all selling of liquor without the license an offense, although the language of section 4 might appear to mean this, at the first glance. The license referred to is required only for selling in quantities less than four and seven eighths gallons. That is the subject-matter of the whole act. Wholesale liquor dealers are not treated of at all. Their status remains as fixed in earlier statutes.

The indictment is bad—First, because it does not charge sales of liquor in quantities less than four and seven eighths gallons; second, because it charges in one count more than one offense; third, because it fails to negative the exception or defense contained in section 15 of the statute; fourth, because it fails to state any price for which the liquor was sold.

(1) The indictment actually charges defendant with selling in quantities less than five gallons. It is at once apparent that he might have so sold without committing any infraction of the law of 1891, under which he is prosecuted. He may have sold four and eight ninths gallons, or four and nine tenths, or any other quantity between four and seven eighths and five gallons, without offending against the statute, and yet his act would come within the language of the indictment. The authorities are uniform that an allegation as to quantity is essential, and its omission a fatal defect. Bish. on Statutory Crimes, secs. 1034, 1039;

State v. Chambliss, 45 Ark. 350; Blakely v. State, 57 Miss. 680; State v. Wilkson, 36 Mo. App. 380; People v. Bradt, 10 N. Y. Suppl. 158; State v. Shaw, 2 Dev. 198.

It will undoubtedly be urged that, while there is a mistake in alleging "quantities less than five gallons," yet the further statement of, "to wit, one pint," cures the error, and brings the act charged within the statute. This idea would be equally sound if, instead of five gallons, the indictment had said five hundred. Would the indictment be good, under the statute, alleging that defendant sold a pint of spirituous liquor? While there is some difference of authority on this point, yet the better reasoning is against the validity of such an indictment. If the pleader had stated that the sale was of "one pint, and no more," the allegation would be good; but there is nothing in the indictment inconsistent with the sale having been of more than four and seven eighths gallons, and of many pints, including the one pleaded. Arbintrode v. State, 67 Ind. 268; Grope v. State, Id. 328; State v. Fanning, 38 Mo. 409; Struckman v. State, 21 Ind. 161; Commonwealth v. Odlin, 23 Pick. 279; People v. Bradt, 10 N. Y. Suppl. 158.

"As a mode of applying this rule, a test is often given, thus: If all the facts alleged in the indictment may be true, and yet the defendant not guilty, the indictment is insufficient. This plain reason may be assigned for it: that a verdict does nothing more than verify the facts charged; and, if these do not show the party guilty, he can not be considered as having violated the statute. To apply these rules, this count alleges, affirmatively, that the defendant did sell one pint, etc. To one not accustomed to the accuracy applicable to these subjects, and so useful on the whole, as a security and protection of the subject, it may seem hypercritical to say that this is not an averment of a

sale under fifteen gallons. But is it so? If fifteen gallons were sold, it would be true that one and many pints were sold." Com. v. Odlin, 23 Pick. 279. In the present case all the facts alleged may be true, and yet the defendant not guilty, and, as shown in the foregoing quotation, the indictment must consequently be insufficient. The closing language in the Odlin case, which is quoted in section 1039 of Bishop on Statutory Crimes, can not help the indictment here, on account of the error in pleading five gallons instead of four and seven eighths.

(2) The indictment has but one count, and charges with distinctness at least two sales, each of which, if any crime at all, would be a complete offense under the statute. It may be conceded that the addition of the charge of sales to "divers other persons" does not add to this objection, for the reason that such a phrase might, perhaps, when it follows a clear and distinct averment of names of purchasers, be rejected as vague and indefinite surplusage. It is an elementary rule of criminal pleading that an indictment must not, in a single count, charge more than one offense. 1 Bish. Crim. Proc., ch. 18.

(3) The indictment is also bad because it fails to negative the possible defense contained in section 15 of the statute. That section refers to sales by druggists in quantities less than one quart when sold upon the written prescription of a regular physician. In answer to this, it may be plausibly urged that this exception is not in the same section which declares the offense and its punishment, and that, therefore, it is not necessary for the indictment to negative it. The mere place in a statute at which such an exception appears is no safe guide as to the necessity of excluding it from the case by a negative averment. State v. O'Donnell, 10 R. I. 475; U. S. v. Cook, 17 Wall. 173. In the present case, however, the necessity for such a

negative statement will be apparent by reference to the indictment itself, which shows affirmatively that defendant is indicted as a "druggist." Having chosen thus to accuse him, it was obviously incumbent upon the pleader to negative the defenses which the statute gives to the class of persons to which defendant was alleged to belong. It is hardly · necessary to cite authorities. 1 Bish. Crim. Proc., sec. 631, et seq.; Bish. Stat. Crimes, sec. 1042. The indictment ought to have set out that defendant sold in quantities less than one quart, and not to fill a prescription made in writing by a regular physician, or that he sold in quantities greater than one quart and less than four and seven eighths gallons. Blakely v. State, 57 Miss. 680.

(4) The offense charged is the unlawful sale of liquor. A most important element of a sale is the price paid for the thing sold, but there is no allegation as to price in the indictment. In a similar case the supreme court of Indiana says: "The objection we find to the indictment is that there is no allegation of the price for which the liquor was sold. On motion to quash, this defect is fatal. Every fact essential to be proved should be alleged. Here the pleader alleges a 'sale,' which is a conclusion from the facts, and leaves the important element of price, a fact essential to support the idea of sale, to be inferred. Perhaps, had all the facts been stated, the court might have considered it a barter. It is inverting the order of pleading to allege conclusions, and leave the facts to inference." Divine v. State, 4 Ind. 240; State v. Lockstand, Id. 573; State v. Miles, Id. 578; Snyder v. State, 5 Id. 194; O'Connor v. State, 45 Id. 348; Segur v. State, 6 Id. 451; Hubbard v. State, 11 Id. 554; State v. Jackson, 54 Id. 412; Neales v. State, 10 Mo. 499. It is only fair to add that, notwithstanding the well settled doctrine in Indiana, the authorities are very numerous that it is not necessary in such indictments to set out

the price. As it is a new question in New Mexico, this court will undoubtedly base its decision upon sound reasoning rather than upon mere precedent.

II. There being but one count in the indictment, not more than one offense could properly be proved. It is a principle of common law pleading, applicable to both civil and criminal cases, that all pleadings must be single. This rule naturally extends also to the evidence adduced to support a pleading, and is applied with great strictness to procedure in criminal trials. Hodgman v. People, 4 Denio, 236; Stockwell v. State, 27 Ohio St. 566; State v. Fierline, 19 Mo. 381; King v. State, 66 Miss. 506, 6 So. Rep. 188; 1 Bish. Crim. Proc., sec. 1124. Evidence was improperly admitted in the court below of many pretended offenses, and it is impossible to know of which the jury found defendant guilty. Indeed, it is probable that they never agreed on any one, but part of the jury may have believed him guilty of one, and another portion may have believed him guilty of another; so that there may never have been that unanimity in the jury which the law requires.

III. The admission of evidence in so-called "rebuttal," as to offenses not specifically charged in the indictment, is fatal error. The authorities cited under the second point are also applicable here. The indictment charged a sale to Motter and to Pierce, and to divers other persons. Upon the case in chief, evidence was given of sales to Motter and Pierce, and the territory closed its case. There is possibly some room to contend that defendant should then have asked the court to compel the prosecutor to elect as to which of the sales he would proceed upon; but it certainly can not be seriously argued that the admission afterward, and after defendant had closed his defense, and against his strenuous objection, of the evidence of Brown and Rogers, was anything but an out-

rageous invasion of defendant's rights. These witnesses were allowed to testify, not only as to entirely different transactions from those pleaded in the indictment, and from those testified to in the case in chief, but also as to matters of hearsay, public rumor, and transactions with other persons than defendant. No man can say whether the jury were persuaded to find defendant guilty on account of the improper evidence of W. B. Young that defendant had received consignments of liquors; or on account of the improper evidence of Brown that he had made purchases at various times; or on account of the improper statement forced into Brown's mouth, with the approval of the court, that it was a "notorious fact that, when people wanted whisky, they went to that place, and got it;" or on account of the extraordinary evidence of Rogers, who testified, not only that he had bought himself, but also that he had sent the bell boy of the hotel to defendant for whisky, although he did not know what was the result. I invite the special attention of the court to this evidence, all vigorously objected to. If its admission can be held "harmless error," then the conclusion is irresistible that it is absolutely useless in any case to urge upon an appellate court any argument for reversal based upon the admission of improper and incompetent evidence, no matter how prejudical to a defendant and utterly destructive of all chance of his receiving a favorable consideration by the jury. It may be said that this evidence did no harm because defendant, on his own testimony, upon the theory of the law announced by the court below, was guilty, and therefore properly convicted. It will not be denied, however, that if, in spite of all the evidence offered, the jury had seen fit to acquit the defendant, the verdict must have been allowed to stand, and he would have gone free. He had a right to strive to secure such a verdict, and his chances of obtaining it

should never have been diminished or impaired by loading the record with grossly improper, misleading, and damaging evidence. Moreover, it is not true that defendant's evidence shows anything about a large portion of the facts testified to by Brown and Rogers. While there is some diversity of authority on the subject, yet the better rule, as laid down in many decisions, is quite well established that, where error appears in the record of a case brought up for review, the presumption is that the party against whom the ruling was made has been prejudiced, and it is incumbent upon the opposing party to show that no prejudice could have resulted from the error. Thompson v. Wilson, 34 Ind. 97; Railway Co. v. Hunter, 33 Ind. 355; Wiseman v. Wiseman, 73 Ind. 116; Wiley v. Givens, 6 Gratt. 284, 285; State v. Patton, 13 Ired. 422; Jackson v. Water Co., 14 Cal. 25; Carpentier v. Williamson, 25 Cal. 167; Norwood v. Kenfield, 30 Cal. 399; Kepler v. Conklin, 89 Ind. 395; Peterson v. Hutchinson, 30 Ind. 38; Bank v. Mott, 39 Barb. 185; Thacher v. Jones, 31 Me. 534; Lane v. Crombie, 12 Pick. 177. The court of appeals of New York lays down the rule as follows: "If it is possible that the defendant was injured by this error, the verdict must be set aside. It is not for the defendant to show how or to what extent he was prejudiced; the existence of the error establishes his claim to relief. If the plaintiffs wish to sustain the verdict, it is for them to show that the error did not and could not have affected it." Greene v. White, 37 N. Y. 406, 407. Two hundred years ago in England, in some cases judges directly ordered juries to convict defendants and even threatened jurors with fine and imprisonment if they were contumacious. In principle, this was no worse than misleading a jury by inducing a witness to state that it was notorious that defendant had been guilty of offenses similar to that for which he was indicted. Undue and improper per-

suasion from the bench is quite as reprehensible and more dangerous to the rights of the citizen than open and lawless threats.

IV.   It was a gross abuse of judicial discretion to refuse to change the venue of the case to some county outside of the Fifth judicial district.   It is conceded that an application for a change of venue, for reasons and under circumstances different from those specified in the statute, is addressed to the discretion of the court, and is reviewable only when an abuse of that discretion is apparent.   The authorities are uniform, however, that the discretion is judicial, and not personal.   Walker v. State, 42 Tex. 376.   In the case of Dupree v. State, 2 Tex. App. 617, the doctrine is clearly announced:   "The discretion given to the district judge in passing upon the merits of the application is a judicial, and not a personal, discretion; and his action may be revised by this court, on appeal, when properly presented by a bill of exceptions, as is done in this case."   By reference to the record it will be seen that one of the grounds upon which the change of venue was asked was prejudice on the part of the judge of such a character that defendant could not have a fair trial.   There can be no doubt that no defendant should be tried before a judge entertaining such a prejudice, and there can be no doubt in the present case that the affidavits presented stated facts and circumstances which, if true, lead irresistibly to the conclusion that such a prejudice did exist in the mind of the judge.   The record does not show that any finding was made by the court as to the truth or sufficiency of the affidavits, except as such finding may be inferred from the prompt denial of the motion.   I assert with confidence that the affidavits were sufficient, if true.   The question is as to what we can learn from the record as to their truth, for in this court we are limited to what appears in the record.   It is obviously a delicate and

difficult task to obtain light on such a subject from the record of a case. A judge may be filled with the most violent, unjust, unfair, and unreasoning prejudice against a defendant, and may be swayed by his feeling throughout the whole trial to the great injury of his victim, and yet the record, on paper, may present no evidence of the true state of affairs. The judge may, by every shade of manner, by every tone of his voice, by every glance of his eye, express and convey to the jury his absolute loathing and contempt for the defendant, but we would be able to discover nothing of this in the record if the judge be discreet of speech; but, if we find positive evidences in the record of the existence of a prejudice in the mind of the judge, we may properly infer the existence of all the other unrecordable evidences and expressions of such prejudice during the trial and in the presence of the jury. No one can fully measure the effect on a jury of such conduct by a judge. Jurors are apt to look, and properly, upon the judge as the personification and embodiment of the majesty of the law, and to attach unlimited importance to his every word, look, and gesture. The policy of allowing litigants absolute power of escape from the persecution of a judicial enemy has been sanctioned by legislative enactment in a number of states. Turner v. Hitchcock, 20 Iowa, 311; Berner v. Frazier, 8 Iowa, 77; McGoon v. Little, 2 Gilman, 42; Leyner v. State, 8 Ind. 491. Courts should be quite as careful and zealous to guard the rights of the citizen as any legislature.

Now, what do we find in the record indicative of the sentiment and feeling of the judge toward the defendant? There are the affidavits of defendant and his counsel, Mr. Cullinane, a practicing member of the bar, in good standing. It is easy to understand how difficult it is for a lawyer to bring himself to so assail the judge before whom he appears, and we must

believe that either he has good cause for doing so, or
is a most wicked and depraved person. An examina-
tion of the record will reveal enough in the action of
the judge himself to justify the affidavits, and to lead
to an almost, if not quite, conclusive presumption that
the atmosphere of the court room was so decidedly
unfriendly as to be very hurtful to defendant. Next,
we have the application and affidavit for a continuance,
which was promptly denied without any counter show-
ing. As this affidavit will be referred to later in this
brief, it is sufficient at this point to say that it fully
met all the requirements of the statute on the subject
of continuances. Comp. Laws, 1884, sec. 2049. Yet
the judge needed no active opposition to the applica-
tion to enable him to say that there was nothing in it.
Then the judge, with equal promptness, held the
indictment good, notwithstanding its many deform-
ities, and it is hardly credible that he could have given
it any serious and careful consideration. When the
defendant's counsel, with the view of affecting the
credibility of the witness Motter, asked him if he did
not, as a matter of fact, go to defendant's store to get
evidence against defendant, the court excluded the
question. Certainly, if not blinded by some over-
powering feeling, the judge would have known that
such a question was eminently proper. There are
numerous other adverse rulings in the record, of which
no notice will be taken here, because the most of them
are merely consistent with the theory of the law held
by the court below. Attention is called, however, to
the admission of the evidence of Brown and Rogers,
which was in no sense proper in rebuttal, nor other-
wise admissible, as has been already shown, and to the
remarks and questions of the judge, who seems to
have been under some apprehension that the defend-
ant might escape if he did not assist the prosecution.
He, in effect, tells a witness to state that he went to

defendant "for the purpose of buying liquor as he would have bought it from a saloon." Attention is also called to the extraordinary question allowed by the court, and to the evidence as to transactions between witness and a bell boy, with which defendant had nothing to do, and to the truly marvelous examination of the same witness by the court, in which the judge sought to browbeat the witness into giving grossly improper evidence against defendant, which would be well calculated to prejudice the jury against him. Lastly, we have the instructions of the court, which, taken as a whole, are violently unfair to the defendant, stating again and again with great emphasis the most unfavorable views of the case, as though the judge were still fearful that the jury would fail him. And, after this, the judge sentences defendant to pay the highest fine permitted by the law. So far as the record shows, defendant was not a hardened criminal, whose first conviction should be thus severely punished. Indeed, the record shows clearly that he was acting, as he thought, within his right under the law, and that he can not possibly be considered as a willful and intentional lawbreaker, if he is guilty at all. But no consideration of this sort appears to have entered the mind of the judge. Is there not in all this such strong indication of a feeling of hostility to the defendant, so overpowering as to blind and pervert the judgment of the judge, and thus render him incapable of giving the defendant a fair trial? In closing this branch of the case, I desire to say that I have never had so unpleasant a task, and that nothing but a sense of the absolute and unavoidable duty which I owe my client could induce me to criticise any judge, as I am compelled to do in this case.

Another ground for change of venue was local prejudice in Chavez county, as to which no investigation was made by the court, but was passed upon evi-

dently as though the judge considered the matter one of "personal," and not "judicial," discretion, and needed no evidence to inform his judicial conscience.

5.   Defendant should have been allowed to show in his defense that, as a druggist, he made the sales of liquor testified about, upon prescriptions written by him as a physician, and given in good faith to his patients.   Boom v. State, 10 Tex. App. 418; State v. Clevenger, 25 Mo. App. 654.   See, also, the following cases treating of similar questions:   Commonwealth v. Reynolds, 12 S. W. Rep. 132; Parker v. Commonwealth, Id. 276; State v. Larrimore, 19 Mo. 391; State v. Ray, 72 N. C. 254; State v. Mitchell, 28 Mo. 563.

There is nothing in section 15, chapter 9, Laws, 1891, which suggests that a regular physician, who is also a druggist, can not write such a prescription, nor anything which prevents any druggist from filling any such prescription, no matter by whom written, if the writer be a regular physician.   In the instructions to the jury great stress was laid on the word "received" as showing that the prescription must come from some other person than the druggist.   The ordinary routine as to a prescription is that it is given by the physician to his patient, and by the latter, or by someone for him, presented to a druggist who then "receives" it. But it often happens that the doctor himself takes it to the druggist, and where the druggist and the physician are the same, it usually happens that the writer takes it into his drug store, there compounds it, and files it, as he would a prescription from any other source. Does he not act as the agent of the patient in presenting it at a drug store, whether that of another person or his own?   And, in each of these cases, does not the druggist "receive" the prescription in every sense of the word, except the most narrow and literal?

And yet the courts of New Mexico—or one of them —seek to brand as a criminal one who has done this, and no more.

EDWARD L. BARTLETT, solicitor general, for the territory.

"Where a party complains of an alleged erroneous decision of the court trying the case, either in the exclusion or admission of evidence, he must point out in his motion for new trial, with reasonable certainty, the particular evidence admitted or excluded; otherwise the court below need not, and this court will not, consider such alleged erroneous decision." Territory v. Anderson, 4 N. M. (Gil.) 228, and cases cited.

The manner, looks, gestures, or inadvertent remarks of the court will not be considered, only what appears on the record. Territory v. O'Donnell, 4 N. M. (Gil.) 211.

The granting or refusal of a continuance rests in the discretion of the trial court, and its determination will not be disturbed in this court. Territory v. Anderson, 4 N. M. (Gil.) 219; Territory v. Kelley, 2 N. M. 292–301; Thomas v. McCormick, 1 N. M. 371; 1 Bish. Crim. Proc., sec. 951, and cases cited.

Statutes providing for the submission of special questions of fact to the jury, upon the application of either party, do not apply to criminal prosecutions, only to civil cases. 2 Thomp. on Trials, sec. 2683; State v. Ridley, 48 Iowa, 370; State v. Fooks, 65 Id. 196–199; 2 McLean's Ann. Stat. (Iowa), sec. 4015; People v. Marion, 29 Mich. 40; Cooley's Const. Lim., secs. 321–323.

But granting that such special questions of fact must be submitted in a criminal case, then only such need be submitted as bear upon facts material to the

issue, and whose answers may in some way control or affect a general verdict.    It is useless to compel a jury to answer a question whose answer, whatever it may be, can have no bearing upon the general verdict.    City of Wyandotte v. White, 13 Kan. 191–196.

A druggist, who is a duly qualified physician, can not sell on his own prescription.    Commonwealth v. Gould, 33 N. E. Rep. 656; Black on Intoxicating Liquors, sec. 216; State v. Anderson, 81 Mo. 78; Tilford v. State, 109 Ind. 359; 10 N. E. Rep. 107; Gault v. State, 34 Ga. 536; Brinson v. State, 8 So. Rep. (Ala.) 522; Commonwealth v. Minor, 88 Ky. 422; 11 S. W. Rep. 472; State v. Atkinson, 11 S. E. Rep. (S. C.) 693.

The ultimate question in all such cases is always as to the purpose for which the article is to be used, and the good faith of the parties; and, even if the sale was made under the direction and prescription of the physician, that is not sufficient, unless it is also shown that it was prescribed for medical purposes.    Black on Intoxicating Liquors, sec. 206; State v. Curtis, 29 Kan. 277.

The question of good faith must be determined upon the facts of each particular case, with such light as can be derived from the general character and conduct of defendant's business.    And the burden of proof is on the defendant to show that the sale was lawful.    Black on Intoxicating Liquors, sec. 210, and cases cited.

The act of 1891 prohibits the sale of liquor without license in this territory; and, if liquor was sold without license, as was admitted in this case, the burden of proof that it was lawfully sold is on the defendant.    State v. Cloughly, 73 Iowa, 626, 35 N. W. Rep. 652; Greenlf. on Ev., sec. 79.

Brief of Mr. Clancy on motion for rehearing.

Misconduct of counsel, no matter how gross, should not be visited upon the client, unless that client has actively participated therein. The punishment should be confined to the guilty party, and not extended beyond him. This is so obviously in harmony with all sense of justice that the mere statement would seem to be sufficient to carry conviction with it. If any authorities exist directly in point, I have not had sufficient time to find them; but there are a few cases in which courts have recognized the propriety of punishing counsel, rather than clients, for professional misbehavior. Brown v. Brown, 4 Ind. 627; Loveland v. Jones, Id. 184; Kane v. Van Vranken, 5 Paige, 62; Powell v. Kane, Id. 265; Cushman v. Brown, 6 Paige, 539; Powell v. Kane, 2 Edw. Ch. 450; Partridge v. Jackson, Id. 521. Most strongly should this rule be applied in criminal cases, in which defendants may be deprived of reputation, liberty, or even of life, without any fault of their own, if the views of the court are to prevail. I feel that I should say, on behalf of my client, that we are not personally acquainted; that we have never, so far as I know, even seen each other; that I have had no communication with him as to the facts or merits of the case, nor as to how I should conduct it; and that he ought not to be held responsible for anything which I have done.

If, in my earnest effort to do my whole duty to a client who has intrusted his case to me, I have exceeded the bounds of legitimate and proper criticism of the trial court, I have done so unconsciously. In view of the severe opinion of the court, and in view of the respect which every member of the bar ought always to exhibit toward the courts before which he appears, I desire to express my regret that any act of mine could have called forth from any court such condemnation,

and to say, although guiltless of any intentional offense, that anything which even appears to the court improper is a fit subject for apology, which I now offer to the highest tribunal of the territory.   I may also properly repeat here that which I said with great emphasis upon the oral argument, although the court appears to have overlooked it, and that is that I did not intend to make any attack upon the honesty or honor or motives of the district judge, but to confine myself to legitimate criticism of his official conduct.

It is respectfully submitted that this case ought to receive some further consideration from this court.

OPINION.

Fall, J.—The indictment on which defendant was convicted is as follows: "The grand jurors for the territory of New Mexico, taken from the body of the good and lawful men of the county of Eddy, aforesaid, duly elected, impaneled, sworn, and charged at the term aforesaid to inquire in and for the body of the county of Eddy aforesaid, upon their oaths do present that James A. Tomlinson, druggist, late of the county of Eddy, in the territory of New Mexico, on the tenth day of April, in the year of our Lord one thousand, eight hundred and ninety-two, at the county of Eddy aforesaid, and on divers other days between that day and the day of finding this indictment, unlawfully did sell and offer for sale to one E. S. Motter and to one R. H. Pierce, and to divers other persons whose names are to the said grand jurors unknown, divers spirituous, malt liquors, and wine, of quantities less than five gallons at the same time to the same person, to wit, one pint of beer, one pint of whisky, and one pint of wine, without having first obtained a license therefor in the manner provided by the laws of the territory of New Mexico, against the form of the statute in such case made and provided, and against the peace and dignity of the territory of New Mexico."

Defendant was arraigned and pleaded on the twenty-third of March, 1893, and on the next day he moved the court for a change of venue to some county outside of the Fifth judicial district, in which Eddy county is situated, upon the grounds of local prejudice against him in that county, and of prejudice in the mind of the judge of the district against defendant. The venue was accordingly changed to Chavez county, another county within the same district. On the thirtieth of March, in the court for Chavez county, defendant renewed his motion for a change of venue to some county beyond the district, upon the ground of local prejudice in that county, and on account of the alleged prejudice of the judge, which motion was denied. Defendant then moved for a continuance, and his motion was denied. He then made a motion to quash the indictment, which was denied. Defendant was then, on the same day, tried, and a verdict of guilty rendered. Motions for a new trial and in arrest of judgment were made and denied, and defendant was sentenced to pay a fine of $500.

The prosecution proved on the trial a sale of liquor to each of the persons named in the indictment, Motter and Pierce, and defendant attempted to defend upon the ground that the sales had been made by him as a druggist, upon prescriptions made by him as a regular physician, this defense being founded upon section 15 of the statute, which provides "that nothing in this act shall be construed so as to tax druggists for selling liquors in quantities less than one quart when sold to fill a prescription made in writing (not printed) by a regular physician, and that a separate prescription shall be received and filed by the druggist for each sale made, not to be drank at the place of sale or upon the premises where sold." The court excluded all evidence in support of this defense, holding that the druggist and physician referred to in the statute could not be

the same person.    After this, in rebuttal and against defendant's objections, other persons were allowed to testify as to other sales of liquor by defendant.

After the affirmance of the judgment, defendant made a motion for a rehearing, on the following grounds: (1) Because the court has failed to consider the point made by appellant as to the admission of improper evidence against appellant. (2) Because the court has failed to consider the point made by appellant as to the denial of his motion for a continuance. (3) Because the court has failed to look into a large number of the rulings and decisions of the court below as to which error has been assigned by appellant. (4) Because the court has refused to consider the objections to the sufficiency of the indictment, and has put its refusal upon a ground not suggested in the briefs nor upon the argument, and as to which counsel have had no opportunity of being heard. (5) Because the court, in holding that good faith was no element of appellant's defense, passes upon a question of fact as to which a jury alone is competent to decide, and which was excluded from the consideration of the jury in the court below. (6) Because two members of the court base the decision principally, and two other members entirely, upon the misconduct of counsel, which should have no effect upon the merits of the case.

I am of opinion that the judgment should be affirmed. While, under some of the authorities, the charge of the court might have been erroneous, in so far as stating that no druggist could defend by showing that he sold the liquor on his own prescription as a physician, still, under the evidence in this cause, good faith was no element of the defense.  No effort was made to have the prosecution elect as to which offense the defendant should be tried upon, except the motion to quash, which was properly overruled; the defendant having

SALE of intoxicating liquors, at retail, by druggist, without license: indictment.

pleaded, the plea not being withdrawn, and the venue having been changed. The record discloses beyond the peradventure of a doubt that the defendant was by a device seeking to evade the law; and, under the aggravating circumstances of the case, the fine of the full limit of the law was properly imposed.

Further, the brief for defendant in this cause contains such an unwarranted attack upon the trial judge, his conduct, rulings, and instructions, as to amount to a scandalous and impertinent attack upon the judiciary of the territory and of this court, of which the nisi prius judge is a member, which would warrant us of our own motion in striking the brief and argument from the files, and affirming the decision without further investigation. It is proper for defendant to show errors, and apply law to the same; but to allow an attorney to come into this court, and criticise and question, comment upon, and condemn the motives which actuated the judge in his rulings below, would be to place the defendant above the law, and to subject the courts of this territory to wild tirades of abuse from any person of a malignant or depraved mind,—would be lowering the dignity of the bench, and subversive of good government. The judgment should be affirmed.

*Scandalous brief: dismissal of appeal.*

SEEDS, J., concurs.

O'BRIEN, C. J., and LEE, J.—We concur in the foregoing conclusion, on the ground that the appeal should be dismissed on account of the unwarranted attack upon the official conduct of the trial judge in appellant's printed brief.